# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| v. | § | 1:19-CV-00171-LY |
| | § | |
| CLUBCORP HOLDINGS, INC., et al. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Motion to Remand (Dkt. No. 17); Defendant's Response (Dkt. No. 21); and Plaintiff's Reply (Dkt. No. 23). The undersigned submits this Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

The State of Texas brings this suit against ClubCorp Holdings, Inc. and 27 ClubCorp country or business clubs. Texas makes three requests for relief: (1) a judgment compelling ClubCorp to permit examination of its books and records; (2) a judgment compelling ClubCorp to report property; and (3) a judgment compelling ClubCorp to deliver property. Dkt. No. 1-1 at 40-42. ClubCorp is one of the largest country club and golf club companies in the country. Texas alleges that ClubCorp has in its possession millions of dollars of "membership initiation deposits" which new members paid to clubs at the beginning of their membership. Texas alleges that the agreements between the members and ClubCorp provide that the member is entitled to the return of the deposit after 30 years. It claims, based on ClubCorp's SEC filings, that ClubCorp possesses millions of dollars of deposits that have not been claimed, despite being subject to return to the member. Texas asserts that, to the

extent the deposits were paid by members with a last known address in Texas, they are unclaimed abandoned property, and under the Texas Property Code ClubCorp is obligated to deliver the funds to the State, which will hold the property in a custodial capacity until the owner claims it. In addition to seeking the delivery of any such funds, more fundamentally Texas requests that the Court order ClubCorp to permit the audit of its books and records, and to report to Texas any unclaimed property as required by state law. ClubCorp has objected to any audit or collection for years, and despite negotiations covering several years, the parties have been unable to resolve the dispute. Texas thus brought this suit in Texas state court, and ClubCorp removed it, asserting that the suit raises a federal question.

Though ClubCorp concedes that the face of the Petition raises solely state law claims under the Texas Property Code, it argues the Petition nevertheless raises issues necessarily resolved by federal common law. Invoking the "well pleaded complaint" rule, ClubCorp asserts that the suit requires the application of federal common law to determine whether Texas has the right, power, and jurisdiction to claim the un-refunded deposits. It argues that this requires application of a trilogy of United States Supreme Court cases: *Texas v. New Jersey*, 379 U.S. 674 (1965), *Pennsylvania v. New York*, 407 U.S. 206 (1972), and *Delaware v. New York*, 507 U.S. 490 (1993). ClubCorp argues that the substantial questions of federal law, resolved by the rules set out in these three cases, brings the case within this Court's subject matter jurisdiction, rendering removal proper under 28 U.S.C. §1331. *See M.J. Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 391-93 (3rd Cir. 2012).

Texas disagrees, asserting that its power to compel an audit and demand delivery of unclaimed property arises from state sovereignty rather than federal common law. Texas argues that it has pled purely state law claims, claims that do not rest on any disputed or substantial federal

2

question. Texas pushes back on ClubCorp's argument that the federal rules of decision set down in the *Texas* Trilogy apply to the case at hand, arguing that they only apply in cases where two or more states are making competing claims for the same property, which is not the case here. Texas thus moves to remand under 28 U.S.C. §1447(c) for lack of subject matter jurisdiction.

## II. LEGAL STANDARDS

### A. Federal question jurisdiction and removal

A defendant may remove an action to federal court if the federal court possesses subject matter jurisdiction. 28 U.S.C. § 1441(a); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The federal court's presumption, however, is that a suit filed in state court "lies outside [its] limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723. Thus, the removing party bears the burden of showing that the removal was proper. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997). Removal raises significant federal concerns, and thus, "the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

One of the two grounds for federal jurisdiction is that the suit "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law if it appears from the face of a well-pleaded complaint that the cause of action is created by federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Generally, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the

plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987). "Since a defendant may remove a case only if the claim could have been brought in federal court . . . the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986). If a plaintiff chooses not to present a federal claim, even though one is potentially available, the defendant may not remove the case from state to federal court. *See, e.g., The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913). Thus, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. "Even an inevitable federal defense does not provide a basis for removal jurisdiction." *Bernhard v. Whitney National Bank*, 523 F.3d 546, 551 (5th Cir. 2008).

There are, however, rare cases in which, though only state claims are pled, "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)). Thus, in some instances federal question jurisdiction will also "lie over state-law claims that implicate significant federal issues" and "turn on substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The Supreme Court has called this category of federal question cases "special and small," *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), and directed that federal courts not treat "'federal issue' as a password opening federal courts to any state action embracing a point of federal law." *Grable*, 545 U.S. at 314; *see also Merrell Dow*, 478 U.S. at 813 (holding that the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"). "Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a

4

federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 125 S.Ct. at 2368.

**B.      The *Texas* Trilogy**

Unclaimed property laws are very common—every state and the District of Columbia have enacted them. Generally speaking, the laws permit a state to take possession of unclaimed property and hold it as a custodian for its citizen. *See, e.g.*, TEX. PROP. CODE §§72.001 *et seq*. These escheatment statutes are "creatures of state law." *Delaware v. New York*, 507 U.S. 490, 502 (1993). The Supreme Court, in a series of three decisions, set about resolving the priority of escheatment between competing states. *See, e.g.*, *Texas v. New Jersey*, 379 U.S. 674 (1965); *Pennsylvania v. New York*, 407 U.S. 206 (1972); *Delaware*, 507 U.S. 490. This line of cases—often referred to as the "*Texas* Trilogy"—is federal common law. *See Illinois v. City of Milwaukee, Wis.*, 406 U.S. 91, 105-06 (1972).

In the case that gave the doctrine its name, the dispute centered around which among several competing states was entitled to escheat abandoned intangible property. *Texas v. New Jersey*, 379 U.S. at 677. At least four states claimed the funds that backed uncashed checks held by the Sun Oil Company. *Id.* at 675-77. Because the case involved two or more states suing each other, it invoked the original jurisdiction of the Supreme Court. Further, though each of the competing state's claims were based on their own state statute, the decision of which state took priority was not governed by any statute, and the Supreme Court was therefore required to develop common law to resolve the dispute. After considering multiple proposals put forth by the parties, the Court ultimately adopted a rule intended to set a "bright line" for future cases. Using the term "debtor" to refer to the party holding the unclaimed funds, and "creditor" to designate the "owner" of the unclaimed property, the

5

Supreme Court held that the state of the last known address of the creditor, according to the debtor's books and records, had first priority to claim the funds. *Id.* at 680-82. Secondarily, the Court held that if there is no record of the creditor's address in the debtor's books, or when the "last known address is in a [s]tate which does not provide for escheat of the property owed," then the debtor's state of incorporation would be entitled to escheat the property. *Id.* at 682-83.

Seven years later, the Court was again presented with a dispute between states seeking to claim the same funds. *Pennsylvania v. New York*, 407 U.S. 206 (1972). In this case, several states asked the Court to revisit its priority rules when the property involved was money provided to Western Union to wire to a third party, but which was never claimed by that party, and which the original sender never came to reclaim. As the Court explained, "Because Western Union did not 'regularly record the addresses of its money order creditors,' the primary rule would rarely apply, and the debtor's State of incorporation—Western Union's 'corporate domicile'—would 'receive a much larger share of the unclaimed funds' under the secondary rule." 407 U.S. at 214. Based on this alleged injustice, the states competing with the state in which Western Union was domiciled asked that in such situations, the state in which the money order was purchased be given secondary priority. Declining to "carve out an exception" to the bright line rule of *Texas*, the Supreme Court rejected this request. *Id.* "[T]o vary the application of the *Texas* rule according to the adequacy of the debtor's records would require [us] to do precisely what we said should be avoided—that is, 'to decide each escheat case on the basis of its particular facts or to devise new rules of law to apply to ever-developing new categories of facts.' " *Id.* at 215 (quoting *Texas*, 379 U.S. at 679).

In the last of the trilogy, the Court rejected any efforts to change the priority rules by broadening the concept of a property-holding "debtor," or by allowing the state of the debtor's

6

principal place of business to escheat the property. *Delaware v. New York*, 507 U.S. 490, 502, 506 (1993). The Court summarized the manner in which a court should apply the priority rules from *Texas* as having three steps. First, a court must "determine the precise debtor-creditor relationship as defined by the law that creates the property at issue." *Id.* at 499. "Second . . . the primary rule gives the first opportunity to escheat to the state of 'the creditor's last known address as shown by the debtor's books and records.'" *Id.* at 499-500 (quoting *Texas*, 379 U.S. at 680-81). "Finally, if the primary rule fails because the debtor's records disclose no address for a creditor or because the creditor's last known address is in a [s]tate whose laws do not provide for escheat, the secondary rule awards the right to escheat to the [s]tate in which the debtor is incorporated." *Id.* at 500.

### III. ANALYSIS

Pointing to the *Texas* Trilogy, ClubCorp contends that Texas's claim necessarily turns on the construction of the federal common law created in those cases. The State responds that Texas, not federal, law governs its right to audit ClubCorp for potential unclaimed property. Texas further contends that the cases ClubCorp relies on—*Franchise Tax Bd.* and *Marathon Petroleum Corp.*—do not support ClubCorp's position, but rather support Texas's own motion to remand. Moreover, Texas asserts that to the extent federal common law exists, such law, including the *Texas* Trilogy, is "interstate common law," governing disputes between states, and no such dispute is present here. *Illinois v. City of Milwaukee*, 406 U.S. at 105-06.

In *Franchise Tax Board*, the State of California, seeking to collect unpaid personal income taxes, levied against money held in trust for three union members in a welfare benefit trust. *Franchise Tax Bd.*, 463 U.S. at 1. The trust removed the case to federal court, but the Supreme Court found the case was not removable because, applying the "well-pleaded complaint" rule, an

7

ERISA preemption defense was insufficient to make the case "arise under" federal law, even if the defense was anticipated in the complaint and both parties admitted the defense was the only question in issue. *Id.* at 4. The central statement of *Franchise Tax Board* is that common law federal question jurisdiction exists, but only when "the plaintiff's right to relief necessarily depends on resolution of a question of federal law." *Id.* at 28. Finding that this test was not met in *Franchise Tax Board*, the Supreme Court ordered the case remanded to state court. *Id.* Relying on *Franchise Tax Board*, Texas asserts that its right to relief does not require resolution of any substantial question of federal law, because Texas law establishes a set of conditions under which unclaimed property may be escheated, and audits regarding possible escheatment may be conducted. Texas argues that the *Texas Trilogy* only comes into play when there are competing claims made to property by two or more states, and that no such situation is presented here. It claims that it has tailored its petition to address only property it is entitled to escheat under Texas law, and argues that the theoretical possibility that ClubCorp may in the future be subject to conflicting claims from multiple states does not mean that *this* suit "arises under" federal common law.

The Court agrees. Texas has not a pled a federal claim, but rather has pled a state law claim based upon a Texas statute. *See* TEX. PROP. CODE § 74.709(a) and § 74.702(a). The only mentions of the *Texas* Trilogy in the State's petition are the following:

> ClubCorp has no rights in the property at issue as the unclaimed property is an asset of the lost owners—its former Texas members—and the property is subject to claim by Texas, as the state of the owners' last known address. *See Texas v. New Jersey*, 85 S.Ct. 626 (1965).

\* \* \*

> ClubCorp has refused to permit a complete examination of its books and records. This contravenes the State of Texas's sovereign authority to verify ClubCorp's

> compliance with Texas unclaimed property law and to recover property which has been unclaimed or abandoned by its lawful Texas owner in excess of the dormancy period. The state's rights are superior the rights of the holder. See *Texas v. New Jersey*, 85 S.Ct. 626 (1965), *Delaware v. New York*, 113 S.Ct. 1550 (1993).

Dkt. No. 1-1 at 38, 46, (¶¶ 62 & 69). Plainly, this is not enough to raise a federal claim. In both instances, Texas's primary argument—that it is entitled to seek possession of the allegedly unclaimed property, and to conduct audits to that end—is based on Texas law. It cites to the Trilogy only to demonstrate that it has state sovereignty to support its claim, and that, even if there is another state that might lay claim to the property in the future, it is likely to have a prior right, thereby justifying its request to conduct an audit and seek possession of the funds. "Even an inevitable federal defense does not provide a basis for removal jurisdiction." *Bernhard v. Whitney National Bank*, 523 F.3d 546, 551 (5th Cir. 2008). In this case, it is not clear that issues of state priority are even inevitable.

ClubCorp's reliance on *Marathon Petroleum Co.* is also misplaced. There, two companies challenged the State of Delaware's right to conduct an audit to determine whether funds paid for store gift cards issued by their Ohio subsidiaries were held by the companies and thus subject to escheatment by the state. Relying on the *Texas* Trilogy line of cases, the companies claimed that only Ohio could escheat the gift card funds. 876 F.3d at 499. Recognizing that the *Texas* trilogy only dealt with priority of escheatment claims among states, the *Marathon* court—in *dicta*—found that in certain cases a private party has standing to challenge a state's application of the priority rules to escheat property. 876 F.3d at 492-93. The difference between *Marathon Petroleum Co.* and this case are apparent. There, the private entities sought a declaratory judgment that Delaware's escheatment laws were preempted by federal common law and that the private entities could sue to

9

enforce the priority rules as between Ohio and Delaware. *Id.* at 493. Here, Clubcorp is not suing to enforce the priority rules between Texas and another state, nor is it making a claim of preemption. Instead, it is simply claiming that in the process of determining whether Texas has a right to audit or recover monies from it, the court will have to apply some of the principles from the *Texas* Trilogy. That is not enough to confer jurisdiction on this Court. As even the *Marathon* court noted, "[i]n the absence of a private cause of action under federal common law to enforce the priority rules, there is no cognizable case or controversy over which a federal court may exercise its limited subject matter jurisdiction." *Id.* at 493 n.13 (citations omitted). *See also, Delaware ex rel. French v. Card Compliant, LLC*, 2014 WL 12769809, at *1 (D. Del. Dec. 10, 2014) ("only where states present competing claims to abandoned property does federal common law necessarily come into play to resolve the priority dispute, as illustrated by the *Texas v. New Jersey* cases.").[1]

Finally, the Court disagrees with ClubCorp's characterization of the issues raised by Texas's suit. Clubcorp contends there are four questions of federal law that are "necessarily raised" by Texas's suit, all of which it claims must be decided "under applicable federal common law:"

1. Does the State have the jurisdiction to escheat from an entity other than the "debtor" that happens to be "in possession" of allegedly unclaimed funds? (Dkt. No. 1 ¶¶ 23-26.)

2. Is there even a "debt" potentially subject to escheat when the funds are not payable (i.e., a refund is not yet obtainable) based on the underlying contractual relationship? (Dkt. No. 1 ¶¶ 27-30.)

---

[1]Clubcorp maintains that this case is no longer good law and was overturned by the *Marathon* court's determination that "we disagree with the conclusion that private parties cannot invoke federal common law to challenge a state's authority to escheat property." 876 F.3d at 484. However, the holding in *Card Compliant* was not based on a finding that a private party could not invoke federal common law, but rather held that federal common law was not applicable to the plaintiff's claims, and the defensive invocation of federal common law was insufficient to establish "arising under" jurisdiction.

10

3. Can the State estimate the amount of unclaimed property that is due? (Dkt. No. 1 ¶ 33 n.3.).

4. Can the State establish jurisdiction to escheat under the "primary rule" by using last-known addresses from sources other than the debtor's books and records? (Dkt. No. 1 ¶¶ 31-33.)

To the extent these are issues that the court presiding over Texas's suit must decide, they raise state, not federal questions. State law addresses who qualifies as a "debtor," whether there is a debt, and which property Texas may escheat. The only possible federal common law issue in this sort of case is which state has priority to claim funds if more than one state is making that claim. As the Supreme Court stated in *Delaware v. New York*:

> In framing a State's power to escheat, we must first look to the law that creates property and binds persons to honor property rights. "Property interests, of course, are not created by the Constitution," but rather "by existing rules or understanding that stem from an independent source such as state law."

507 U.S. at 502. The power to escheat stems from state sovereignty, not federal common law. *Id.* ("[D]isposition of abandoned property is a function of the state, a sovereign exercise of a regulatory power over property and the private legal obligations inherent in property."). State law determines if a debtor-creditor relationship exists. *Id.* at 499 (to determine the priority of escheatment as between states, a court must first "determine the precise debtor-creditor relationship as defined by the law that creates the property at issue."). Here, the alleged debtor-creditor relationship was created by contracts between Clubcorp and its members, and state law governs contracts. *McLane Foodservice, Inc. v. Table Rock Restaurants, L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013). Moreover, Texas has adopted statutes defining the property that is subject to report and escheatment. TEX. PROP. CODE § 74.001, *et seq.* Thus, who qualifies as a "debtor" and what qualifies as a "debt" are matters of state law, determined by applying the definitions set out in the Texas statute to the

contracts between ClubCorp and its members, construed under Texas common law. Similarly, the federal common law will not provide the rule of decision—to the extent one is needed[2]—regarding whether Texas may estimate the amount of funds that might be subject to capture. The *Texas* Trilogy says nothing about that issue. At the end of the day, until another state is making a claim to the same funds Texas is interested in, the *Texas* Trilogy is simply not implicated here, or certainly not sufficiently implicated to create federal jurisdiction. *See Grable*, 545 U.S. 308, 313 (2005).[3]

## IV. RECOMMENDATION

Based on the preceding discussion, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **GRANT** Plaintiff's Motion to Remand (Dkt. No. 17) and **REMAND** this case to the 261st Judicial District Court for Travis County, Texas.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within

---

[2] Texas maintains that the only reason it used an estimate of the amount of money subject to escheatment is that ClubCorp and its affiliates have refused to respond to Texas's inquiries. Indeed, one of the primary purposes of this case is to gain access to ClubCorp's books and records to determine the actual amount of abandoned property.

[3] Under *Grable*, federal question jurisdiction based on federal common law exists where: (1) resolving a federal issue is necessary to the resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. *Singh v. Duane Morris LLP,* 538 F.3d 334, 338 (5th Cir. 2008). As is obvious from the discussion in the text, ClubCorp has failed to demonstrate that any of these factors are satisfied here.

fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 5th day of November, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE